UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBIN D. GIBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:14-CV-137 |
| ) | (REEVES/GUYTON) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Doc. 11 & 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14]. Plaintiff Robin D. Gibson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On April 16, 2011, Plaintiff protectively filed a Title II and Title XVIII application with the Social Security Administration with an alleged onset date of February 15, 2010. [Tr. 108-09; 137]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 69-71; 76-77]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, James Dixon, on August 29, 2012 in Knoxville, Tennessee. [Tr. 78; 34]. The ALJ issued an unfavorable decision on October 25, 2012. [Tr. 14-33]. Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on

February 26, 2014. [Tr. 6-13; 1-5].

Having exhausted her administrative remedies, Plaintiff filed a complaint with this Court on April 3, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**I.  ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: left rotator cuff tear, fibromyalgia, disorders of muscle, ligament and fascia (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry (including upward pulling) 50 pounds occasionally, 25 pounds frequently, stand/walk/sit (with normal breaks) 6 hours in an 8 hour workday; unlimited push/pull (including hand/foot controls) within external limitations; no postural, visual, communicative, or environmental limitations; frequent overhead reaching with the left upper extremity; all other manipulative activities are unlimited.
>
> 6. The claimant is capable of performing past relevant work as a bank teller, custodian and teacher's assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2010, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 19-27].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is

3

> suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important

5

benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

On April 16, 2011, Plaintiff protectively filed a disability application with an alleged onset date of February 15, 2010. [Tr. 108-09; 137]. She was 40 years old at the time she filed her application. [Tr. 137]. She has a high school education and past relevant work experience as a bank teller, teacher's assistant, and custodian. [Tr. 128-29; 155]. She alleged that she ceased working due to her conditions of fibromyalgia, thoracic outlet syndrome, and peripheral neuropathy. [Tr. 128].

In January 2010, Plaintiff sought treatment with Dr. Michelle Brewer of Knoxville Neurology Clinic for problems with her balance and numbness and tingling in her left slide. [Tr. 215]. A electromyography ("EMG") and nerve conduction study was performed on February 9, 2010. [Tr. 221]. Dr. Brewer also ordered an MRI and MRA. [Tr. 217]. The results showed "[n]ormal bilateral upper extremity sensorimotor nerve conduction studies[.]" [Tr. 221]. In tests with her arms raised over head and at her sides, the results showed "no evidence for the presence of any dynamic compression of the median nor ulnam somatosensory pathways in brachial plexus" and stimulation studies of the index finger and little finger were "bilaterally normal." [Tr. 230]. The final results of all Plaintiff's testing revealed that the MRI of her head was normal, the MRA of her neck and head were negative, and the EMG/NCS were normal. [Tr. 214]. She was found to have fibromyalgia and rheumatologic disease but "no evidence of

6

neurologic abnormalities at present." [Id.].

Plaintiff received treatment at Tennessee Orthopaedic Clinic in March 2010 for shoulder pain. [Tr. 251]. A MRI conducted on March 11, 2010 revealed "rotator cuff tendon complex" and partial thickness tears in her tendons. [Tr. 254]. Dr. Richard Cunningham noted that she might have a "multifactorial-type issue" including "a thoracic outlet-type of syndrome." [Tr. 251].

Dr. James Milhollin of East Tennessee Medical Group began treating Plaintiff in 2009 for gynecological issues that resulted in a supracervical hysterectomy. [Tr. 358-59]. She followed up with Dr. Milhollin after her surgery with complaints of chronic pain due to a previous fall. [Tr. 346]. He noted that her MRI's and "extensive studies" had not resulted in significant findings and he found that her pain was likely due to fibromyalgia. [Id.]. He stated that her pain was "exacerbated by her falls and has made her suffer significant pain, which is real." [Id.]. In 2011, Dr. Milhollin diagnosed generalized pain syndrome resulting from a "combination of thoracic outlet syndrome, small fiber neuropathy, and fibromyalgia-type syndrome." [Tr. 286]. He referred her to Mayo Clinic. [Id.].

Plaintiff sought treatment with Dr. Jeffrey Hecht from June through September 2010 for back pain due to an injury she incurred at work. [Tr. 258-62]. He noted her "persistent intractable neck pain [and] bilateral arm pain still unexplained." [Tr. 259]. A MRI of her cervical spine was recommended, which was negative, and Plaintiff was again referred to Mayo Clinic. [Tr. 259-61].

Plaintiff was treated at Mayo Clinic on April 5, 2011 by Dr. Devon Rubin who noted that Plaintiff "has a complicated history and is referred for another opinion regarding upper extremity and spine symptoms. She provides a very nicely detailed three-page review of her symptoms."

7

[Tr. 268]. Dr. Rubin ordered an EMG to "assess her mild carpal tunnel syndrome and a cervical radiculopathy." [Tr. 269]. The EMG was "normal without any evidence of a peripheral nerve process involving her arm. Her autonomic test demonstrated only mild decreased sweat output in her hands [and] feet but was otherwise normal." [Tr. 271]. Dr. Rubin noted that "[t]his was an extremely complicated problem. She has a number of symptoms that have limited her ability to function on a regular basis, without a clear diagnosis." [Tr. 269]. He informed Plaintiff that he might "not be able to identify a cause" and chose to focus on treatment of her symptoms. [Id.]

Plaintiff followed up with Dr. Abril of Mayo Clinic who found that:

> [H]er symptoms are definitely consistent with fibromyalgia, but there are also some features that could also be suggestive of a small fiber peripheral neuropathy. I reassured patient that I could not see any evidence of an inflammatory process. The examination showed a complete normal range of motion of the joints without any synovitis, swelling or deformity, and the blood work done at home was not consistent with an autoimmune disorder.

[Tr. 276]. He recommended physical therapy and exercise. [Id.].

On August 16, 2011, Dr. Eva Misra submitted a physical residual functional capacity assessment and diagnosed Plaintiff with fibromyalgia, thoracic outlet syndrome with shoulder pain, and mild loss of grip. [Tr. 368-73]. She found that Plaintiff could perform a full range of daily activities and was limited to lifting and carrying up to twenty pounds. [Tr. 373; 368]. Dr. Misra stated that Plaintiff could sit, stand, or walk for up to six hours without interruption. [Tr. 369]. She found further environmental limitations including that Plaintiff could never tolerate exposure to unprotected heights, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations. [Tr. 372].

Dr. William Downey submitted a physical residual functional capacity assessment on

September 8, 2011. [Tr. 384-92]. He found that Plaintiff could sit, stand, or walk for up to 6 hours in an 8-hour workday, that she was unlimited in her ability to push and pull, could frequently lift up to 50 pounds, and frequently lift up to 25 pounds. [Tr. 385]. He stated that Plaintiff had no postural limitations and was only limited in her ability to reach in all directions. [Tr. 386-87]. Dr. Downey noted her diagnosis of fibromyalgia from various treating physicians but found the alleged severity of her symptoms to be inconsistent with the objective medical evidence. [Tr. 391].

On October 12, 2011, Dr. Milhollin submitted a physical residual functional capacity assessment and found that Plaintiff was very limited in her strength, stamina and ability to work with her hands and arms. [Tr. 434-36]. He stated that she could only sit for 45 minutes at a time, stand or walk for 30 minutes at a time, and was limited to lifting only 0-5 pounds infrequently. [Tr. 434]. He assessed that Plaintiff required breaks for every 30 minutes of work and that she could not reliably attend an 8-hour day, 40-hour work week due to her impairments. [Tr. 435].

### B. *Other Evidence*

The ALJ conducted a hearing on August 29, 2012, in which the Plaintiff and Vocational Expert ("VE"), Edward Smith, testified. [Tr. 34-66]. The ALJ issued an unfavorable decision on October 25, 2012. [Tr. 14-33]. The ALJ assessed Plaintiff with a RFC to perform medium work. [Tr. 20]; see 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). He assigned significant weight to Dr. Downey and found his opinion consistent with the "objective findings rather than the claimant's subjective complaints." [Tr. 27]. Dr. Milhollin and Dr. Misra

were granted little weight because their opinions were unsupported by objective medical evidence and relied on Plaintiff's subjective claims. [Id.].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues her RFC analysis is flawed. She contends that the ALJ failed to properly weigh the medical evidence. Specifically, Plaintiff argues that the ALJ erred in assigning little weight to Dr. Milhollin and Dr. Misra and great weight to Dr. Downey. Further, Plaintiff contends that the ALJ's credibility determination was in error because a severe impairment of fibromyalgia requires careful consideration of a claimant's subjective complaints of pain.

The Commissioner answers that the ALJ properly evaluated the medical evidence and that his RFC determination is supported by substantial evidence. The Commissioner argues that the ALJ properly weighed the medical evidence as a whole, and she further responds that the ALJ correctly assessed Plaintiff's credibility in regards to her severe impairment of fibromyalgia.

## VI. ANALYSIS

The Court will address the issue of Plaintiff's credibility followed by an analysis of the ALJ's consideration of the medical evidence.

### A. Assessing Plaintiff's Credibility

The Court finds that the ALJ erred in his assessment of Plaintiff's credibilty. An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must

be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result,

substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (emphasis in the original)).  However, in difficult cases where credibility is at issue, a court should "'bear in mind that the Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion.'  In other words, a reviewing court should check to be sure that the ALJ erred, if at all, in favor of finding the claimant credible." Laxton v. Astrue, No. 3:09-CV-49, 2010 WL 925791, at *7 (E.D. Tenn. Mar. 9, 2010) (quoting Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 531 (6th Cir.1992)).

Here, the ALJ found that although the Plaintiff's impairments could cause her alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 25].  Plaintiff takes issue with this assessment, specifically arguing that an impairment of fibromyalgia requires a specific analysis of a claimant's subjective complaints.  [See Doc. 12 at 20-21].  The Court agrees. Fibromyalgia requires careful consideration of subjective complaints of pain, and must be considered pursuant to the factors set forth in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529(c)(3).  See Swain v. Comm'r of Soc. Sec., 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (explaining that in assessing the severity of fibromyalgia, credibility assessments are crucial, and "the ALJ must decide, given the factors set out in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled.  For purposes of judicial review, the ALJ's articulation of the reasons supporting his

12

credibility findings becomes very important."). The Court finds that the ALJ failed to articulate a sufficient basis for his credibility assessment.

In finding that the alleged severity of Plaintiff's symptoms was not credible, the ALJ stated only that, "while [her] complaints are numerous, objective findings are sparse despite the fact that the claimant has sought the services of a myriad of specialists[.]" [Tr. 25]. The ALJ did not discuss Plaintiff's testimony, disability reports, function reports, or statements made during examinations. He continually dismissed her subjective complaints of pain without any explanation as to why she was not a credible source. [See Tr. 26-27] (rejecting Dr. Milhollin and Dr. Misra's opinions for relying on Plaintiff's subjective complaints of pain while adopting Dr. Downey's for doing the opposite). For a fibromyalgia case, this is reversible error. See Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 864-65 (6th Cir. 2011) ("the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant . . .The ALJ's decision to reject [claimant's] subjective complaints and their effect on her ability to work is not supported by substantial evidence in the record and constitutes reversible error."); Laxton, 2010 WL 925791, at *12 ("A fibromyalgia sufferer's RFC simply cannot be accurately determined without proper consideration of his own statements. Thus, if the ALJ erroneously rejects the claimant's statements as incredible, the entire RFC determination is flawed.").

Fibromyalgia is an "'elusive' and 'mysterious' disease" that is not detected by diagnostic tests and objective medical evidence. Swain v. Comm'r of Soc. Sec., 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). Disability claims based on fibromyalgia "are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." Kalmbach, 409 F. App'x at 862

13

(emphasis in the original). "This places a premium, therefore, in such cases on the assessment of the claimant's credibility." Swain, 297 F. Supp. 2d at 990.

The Court acknowledges that an ALJ's credibility determination is entitled to deference, but such deference is inappropriate when the decision fails to adhere to agency procedure. The ALJ must consider the factors and provide "sufficiently specific reasons" to make clear the basis of his credibility assessment. See Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2-3. Further, the Court is reminded that in cases where credibility is a crucial element, such as considering a severe impairment of fibromyalgia, the court should "check to be sure that the ALJ erred, if at all, in favor of finding the claimant credible." Laxton, 2010 WL 925791, at *7 (quoting Cohen, 964 F.2d at 531).

In light of this guidance, the Court finds that the ALJ erred in his credibility assessment. The Court finds no evidence of inconsistency in Plaintiff's statements or treatment records. She sought relief from many doctors over the years, consistently complaining of chronic pain, and the Court has yet to find a medical record where a treating physician found the Plaintiff lacked credibility or was unreliable. The ALJ failed to address this point, along with the other pertinent factors set forth in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529(c)(3), summarily dismissing Plaintiff's complaints based on their inconsistency with the objective medical findings. [See Tr. 25]. Such a blanket dismissal is inappropriate in a fibromyalgia case, and therefore, the ALJ's determination of credibility is not based on substantial evidence and constitutes reversible error.

## A. Weighing the Medical Evidence

### 1. The Treating Physician Rule

The Court finds that although the ALJ considered Dr. Milhollin's opinion and explained

the weight assigned, his determination is not supported by substantial evidence. An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather

15

considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the Social Security Administration "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Here, as with his credibility assessment, the ALJ's failure to adequately address Plaintiff's subjective complaints of pain infected his analysis of the medical evidence. In considering Dr. Milhollin's treatment records and RFC assessment, the ALJ found him entitled to little weight because his assessment was "based upon claimant's subjective complaints" without "objective medical findings in support of these limitations." [Tr. 26-27]. The ALJ relied heavily on Plaintiff's diagnostic testing and treatment reports in weighing the medical evidence. The ALJ noted that Plaintiff's MRI studies and other diagnostic tests were normal and that her "physical examinations have also failed to reveal much in the way of positive findings." [Tr. 26].

The Plaintiff takes issue with this analysis and argues that the ALJ erred by focusing on purely objective medical evidence. [See Doc. 12 at 21]. For the reasons set forth above, the Court concurs. In order to assess whether Dr. Milhollin's opinion was consistent with the "substantial evidence" of record, the ALJ must first correctly identify and consider the significant and substantial evidence. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). In a fibromyalgia case, subjective complaints of pain are a crucial piece of evidence. A treating physician opinion shall not be summarily dismissed based simply on a physician's consideration

16

and reliance on a patient's complaints of chronic pain. See Kline v. Astrue, No. 1:08 CV 2284, 2009 WL 4730590, at *2 (N.D. Ohio Dec. 2, 2009) (finding the ALJ erred in dismissing a treating physician "for relying on the subjective report of the symptoms and limitations expressed by plaintiff, even though fibromyalgia, by definition, is not typically subject to objective medical testing.").

Here, there are good reasons to grant Dr. Milhollin at least some weight. He treated the Plaintiff for several years, his treatment records reflect the difficulty of diagnosing her condition and the longevity and consistency of her chronic pain complaints, and his diagnoses and treatment plans are consistent with other treating physicians of record. [See Tr. 214; 268-69; 276 286; 346; 373]. The Court finds that the ALJ erred in not granting Dr. Milhollin's opinion any weight based on his reliance on Plaintiff's subjective complaints of pain.

The Court further finds that the ALJ's dismissal of Dr. Misra's opinion was in error for the same reasons as explained above. [See Tr. 27] (rejecting her opinion because she relied on "claimant's subjective complaints and not on objective medical findings"). Although a non-treating physician is not entitled to the same weight as a treating physician, the ALJ must still weigh an opinion in conjunction with same factors set forth in 20 C.F.R. § 404.1527(c)(2-6). See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."). Yet the ALJ rejected the portions of Dr. Misra's opinion that he believed were influenced by Plaintiff's subjective complaints. Such an analysis ignores crucial and substantial evidence.

Therefore, the Court finds that the ALJ's entire RFC assessment is infected by the same

fatal flaw, namely a cursory dismissal of Plaintiff's subjective complaints of pain after finding that her severe impairments included fibromyalgia. Such a flaw constitutes reversible error.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **GRANTED,** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **DENIED.**

Accordingly, it is recommended that:

1. This case be **REMANDED** for proper consideration of Plaintiff's subjective complaints of pain regarding her severe impairment of fibromyalgia; and

2. On **REMAND**, that Plaintiff's RFC be reassessed based on proper consideration of Plaintiff's subjective complaints of pain.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).